UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

ANN NUZZO

    Plaintiff,                                      Civil Action No.:

VS

FRONTIER AIRLINES, INC. and
G2 SECURE STAFF, LLC.,

    Defendants.
---------------------------------------------

## COMPLAINT

COMES NOW Plaintiff, ANN NUZZO, by her attorneys Law Offices of Goldberg & Loren, as and for her complaint against Defendants, FRONTIER AIRLINES, INC. (hereinafter FRONTIER), and G2 SECURE STAFF, LLC. (G2) alleges the following upon information and belief:

### PARTIES JURISDICTION AND VENUE

1. The subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sec. 1332, insofar as there exists complete diversity of citizenship of the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. Sec. 1391, insofar as the events or omissions giving rise to this action took place within this judicial district.

3. Plaintiff ANN NUZZO is a resident and citizen of the State of New York.

4. FRONTIER is a for profit business organized under the laws of the State of Colorado, maintaining a principal place of business located at 4545 Airport Way, Denver, CO.

5. FRONTIER is authorized to conduct, and does conduct, business in the State of Florida.

6. FRONTIER is authorized to and does, in fact, regularly and continuously conduct and transact business within the State of Florida, including at Tampa International Airport, as further explained below.

7. Defendant G2 SECURE STAFF, LLC., (hereinafter G2) is a corporation organized and doing business in Texas, maintains a principal place of business at 400 E. Las Colinas Blvd., Irving, TX 75039.

8. FRONTIER was and is a common carrier engaged in the business of transporting passengers for hire by air.

9. FRONTIER operates regularly scheduled passenger airline flights from various airports in the United States, including, but not limited to, airports located within this judicial district, namely Tampa International Airport, (hereinafter TPA) located in Tampa Florida.

10. According to its website G2 is a "service provider for nearly every major US airline (whose) wide range of aviation service solutions including full Ground Handling; Aircraft Appearance; Passenger and Ramp Services; Terminal Services; Cargo, Security and Maintenance services.

11. G2 provided one or more of the aforesaid types of ground services to FRONTIER

at Tampa International Airport.

12. On or about February 9, 2023, FRONTIER operated and controlled a certain jet aircraft, designated as FRONTIER Flight 2519 (the "subject aircraft"), which operated from MacArthur Airport in New York to Tampa International Airport (TPA) (the "subject flight").

13. On or about February 9, 2023, ANN NUZZO was a ticketed fare-paying passenger lawfully aboard the subject flight.

14. On or about February 9, 2023, and for some time prior thereto, FRONTIER owned, serviced, maintained, repaired, and/or operated the subject aircraft.

## CAUSE OF ACTION AGAINST FRONTIER

ANN NUZZO realleges and reincorporates all allegations stated in paragraphs one through fourteen, above, and further states:

15. On or about February 9, 2023, FRONTIER possessed a non-delegable duty to safely and securely operate the subject aircraft and subject flight, and provide for the general health, safety and welfare of the passengers aboard such aircraft and flights.

16. In addition to its above-described non-delegable duty FRONTIER's employees, agents and servants were also responsible to ensure a safe and proper boarding and disembarkation process including providing a safe means of egress for its passengers, including ANN NUZZO, from its passenger aircraft.

17. FRONTIER's requirement to provide a safe means of passenger egress extended to the jetways used to disembark said aircraft and flight, and to oversee and

supervise such method of egress was conducted in an orderly and safe manner.

18. Such responsibility required that FRONTIER provide passengers with a safe and level egress and/or pathway from their aircraft onto a jet bridge which too is adjusted to level height and appropriately close distance from the threshold of the aircraft door, prior to allowing passengers to commence the disembarkation process.

19. FRONTIER's duty also included the responsibility to ensure that the aircraft remained properly balanced during the disembarkation process so as to avoid creating a dangerous condition to exiting passengers, by causing a gap and/or misalignment of the pathway passengers were required to traverse in exiting the aircraft.

20. FRONTIER's duty of maintaining aircraft balance included the proper removal of cargo or other potential changes to avoid the proper and safe distribution of the aircraft's weight while passengers were exiting the aircraft.

21. Despite the foregoing, on February 9, 2023, after the Subject Flight parked at the gate, passengers were advised that an imbalance in the aircraft's weight posed a potential risk of harm which required that all passengers immediately disembark the aircraft.

22. FRONTIER employees, agents and/or servants then proceeded to yell at, hurry and/or otherwise rush passengers, including ANN NUZZO, to exit the aircraft and onto the jetway which was positioned at an unsafe height and distance from the opening of the aircraft.

23. On February 9, 2023, while disembarking the subject flight onto the jetway under the above described circumstances, ANN NUZZO was caused to fall and suffered serious and permanent injuries, as more fully described herein, due to FRONTIER'S negligence as aforesaid.

24. FRONTIER'S negligence included but is not limited to creating an unbalanced aircraft, failing to provide a safe means of egress and failing to warn ANN NUZZO of the mis-leveled and unreasonable distance from the aircraft door threshold and the jetway.

As a direct and proximate result of FRONTIER'S beach of their duty and negligence, ANN NUZZO suffered the following items of damage:

    a) Past, present and future disability, discomfort, disfigurement, inability to lead a normal life, shame, humiliation and scarring;

    b) Past, present and future medical and related expenses;

    c) Past, present and future physical and mental pain and suffering;

    d) Past, present and future aggravation of a pre-existing condition; and

    e) Past loss of income and future loss of capacity to earn income in the future.

**WHEREFORE**, ANN NUZZO demands judgment against Defendant FRONTIER for an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS.

ANN NUZZO demands trial by jury of all issues so triable as a right.

## CAUSE OF ACTION AGAINST G2

ANN NUZZO restates each and every allegation set forth in paragraphs one through fourteen above, and further states

25. FRONTIER contracted with G2 to provide ground service providers at TPA.

26. On February 9, 2023, G2 provided one or more ground services for the Subject Flight, including offloading cargo from the Subject Flight.

27. On that date, G2, its employees, agents and/or servants positioned, operated and/or otherwise controlled the jetway used to disembark the Subject Flight.

28. G2, its employees, agents and/or servants, also controlled passenger disembarkation of the Subject Flight.

29. G2, its employees, agents and/or servants offloaded cargo from the Subject Flight in a negligent, careless, and/or reckless manner that caused or contributed to a weight imbalance in the Subject Aircraft, which caused a danger to the passengers disembarking the subject flight.

30. G2, its employees, agents and/or servants, supervised, managed, or otherwise independently, or in combination with FRONTIER, controlled the disembarkation process of the subject flight and performed various functions in a negligent and careless manner which led to an unreasonably dangerous mis-leveled gap and distance between the aircraft door and jetway.

31. Said actions included, but were not limited to advising exiting passengers of the risk of a potential weight imbalance and causing them to rapidly exit the aircraft

without warning of the mis-level and dangerous gap.

32. ANN NUZZO was caused to fall while exiting the aircraft due to G2's breach of their duties and the above described negligent acts.

33. G2'S negligence included but is not limited to creating an unbalanced aircraft, failing to provide a safe means of egress and failing to warn ANN NUZZO of the mis-leveled and unreasonable distance from the aircraft door threshold and the jetway, and failing to provide proper assistance under the circumstances.

As a direct and proximate result of G2'S breach of their duty and negligence, ANN NUZZO suffered the following items of damage:

    a) Past, present and future disability, discomfort, disfigurement, inability to lead a normal life, shame, humiliation and scarring;

    b) Past, present and future medical and related expenses;

    c) Past, present and future physical and mental pain and suffering;

    d) Past, present and future aggravation of a pre-existing condition;

and

    e) Past loss of income and future loss of capacity to earn income in the future.

**WHEREFORE**, ANN NUZZO demands judgment against G2 for an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS. ANN NUZZO demands trial by jury of all issues so triable as a right.

Dated: December 31, 2024

**LAW OFFICES OF GOLDBERG & LOREN, P.A.**

**/s/** *James M. Loren*

James Loren, Esq.
Florida Bar No. 55409
1776 N Pine Island Rd. #224
Plantation, Florida 33322
(800) 719-1617