# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ANN NUZZO,                                        Case No. 8:24-cv-03014TGW

    **Plaintiff,**

v.

FRONTIER AIRLINES, INC., and
G2 SECURE STAFF, LLC.,

    **Defendants.**

_____/

### DEFENDANT FRONTIER AIRLINES, INC.'S ANSWER AND AFFIRMATIVE DEFENSES

Defendant, FRONTIER AIRLINES, INC. ("Frontier"), by its undersigned counsel, answers Plaintiff's Complaint as follows:

### PARTIES JURISDICTION AND VENUE

1. The subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sec. 1332, insofar as there exists complete diversity of citizenship of the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

**ANSWER: The allegations of Paragraph 1 consist of legal conclusions to which no response is required. To the extent a response is deemed necessary, Frontier denies the allegations in Paragraph 1.**

2. Venue is proper in this judicial district pursuant to 28 U.S.C. Sec. 1391, insofar as the events or omissions giving rise to this action took place

within this judicial district.

**ANSWER: The allegations of Paragraph 2 consist of legal conclusions to which no response is required. To the extent a response is deemed necessary, Frontier denies the allegations in Paragraph 2.**

3.   Plaintiff ANN NUZZO is a resident and citizen of the State of New York.

**ANSWER: Frontier is without sufficient knowledge or information necessary to form a belief as to the truth of the allegations in Paragraph 3.**

4.   FRONTIER is a for profit business organized under the laws of the State of Colorado, maintaining a principal place of business located at 4545 Airport Way, Denver, CO.

**ANSWER: Frontier admits only that it is a Colorado corporation with its principal place of business at 4545 Airport Way, Denver, CO. Frontier denies the remaining allegations in Paragraph 4.**

5.   FRONTIER is authorized to conduct, and does conduct, business in the State of Florida.

**ANSWER: Frontier admits the allegations in Paragraph 5.**

6.   FRONTIER is authorized to and does, in fact, regularly and continuously conduct and transact business within the State of Florida, including at Tampa International Airport, as further explained below.

**ANSWER: Frontier admits only that it conducts business in the**

**state of Florida, including at Tampa International Airport. The remaining allegations of Paragraph 6 consist of legal conclusions to which no response is required. To the extent a response is deemed necessary as to the remaining allegations in Paragraph 6, they are denied.**

7. Defendant G2 SECURE STAFF, LLC., (hereinafter G2) is a corporation organized and doing business in Texas, maintains a principal place of business at 400 E. Las Colinas Blvd., Irving, TX 75039.

**ANSWER: Frontier is without sufficient knowledge or information necessary to form a belief as to the truth of the allegations in Paragraph 7.**

8. FRONTIER was and is a common carrier engaged in the business of transporting passengers for hire by air.

**ANSWER: Frontier admits only that it is a common carrier and that it engages in the business of transporting passengers for hire by air. Frontier denies the remaining allegations in Paragraph 8.**

9. FRONTIER operates regularly scheduled passenger airline flights from various airports in the United States, including, but not limited to, airports located within this judicial district, namely Tampa International Airport, (hereinafter TPA) located in Tampa Florida.

**ANSWER: Frontier admits only that it conducts business in the state of Florida, including operating flights into and out of Tampa**

**International Airport. Frontier denies the remaining allegations in Paragraph 9.**

10. According to its website G2 is a "service provider for nearly every major US airline (whose) wide range of aviation service solutions including full Ground Handling; Aircraft Appearance; Passenger and Ramp Services; Terminal Services; Cargo, Security and Maintenance services. [sic]

**ANSWER: Frontier is without sufficient knowledge or information necessary to form a belief as to the truth of the allegations in Paragraph 10.**

11. G2 provided one or more of the aforesaid types of ground services to FRONTIER at Tampa International Airport.

**ANSWER: Frontier admits the allegations in Paragraph 11.**

12. On or about February 9, 2023, FRONTIER operated and controlled a certain jet aircraft, designated as FRONTIER Flight 2519 (the "subject aircraft"), which operated from MacArthur Airport in New York to Tampa International Airport (TPA) (the "subject flight").

**ANSWER: Frontier admits only that on February 9, 2023, Frontier operated Flight 2519 from MacArthur Airport in New York to Tampa International Airport. Frontier denies the remaining allegations in Paragraph 12.**

13. On or about February 9, 2023, ANN NUZZO was a ticketed fare-paying passenger lawfully aboard the subject flight.

**ANSWER: Frontier admits only that Plaintiff was a ticketed passenger on Flight 2519 on February 9, 2023, and that her ticket was paid for. Frontier is without sufficient knowledge of information necessary to form a belief as to the truth of the remaining allegations in Paragraph 13.**

14. On or about February 9, 2023, and for some time prior thereto, FRONTIER owned, serviced, maintained, repaired, and/ or operated the subject aircraft.

**ANSWER: Frontier admits the allegations in Paragraph 14.**

## CAUSE OF ACTION AGAINST FRONTIER

Frontier incorporates by reference all answers stated in response to Paragraphs 1-14 above as though set forth fully herein, and further answers:

15. On or about February 9, 2023, FRONTIER possessed a non-delegable duty to safely and securely operate the subject aircraft and subject flight, and provide for the general health, safety and welfare of the passengers aboard such aircraft and flights.

**ANSWER: The allegations of Paragraph 15 consist of legal conclusions to which no response is required. To the extent a response is deemed necessary as to the allegations in Paragraph 15, Frontier admits only those duties imposed by law and denies the remaining allegations in Paragraph 15.**

16. In addition to its above-described non-delegable duty

FRONTIER's employees, agents and servants were also responsible to ensure a safe and proper boarding and disembarkation process including providing a safe means of egress for its passengers, including ANN NUZZO, from its passenger aircraft.

**ANSWER: The allegations of Paragraph 16 consist of legal conclusions to which no response is required. To the extent a response is deemed necessary as to the allegations in Paragraph 16, Frontier admits only those duties imposed by law and denies the remaining allegations in Paragraph 16.**

17. FRONTIER's requirement to provide a safe means of passenger egress extended to the jetways used to disembark said aircraft and flight, and to oversee and supervise such method of egress was conducted in an orderly and safe manner.

**ANSWER: The allegations of Paragraph 17 consist of legal conclusions to which no response is required. To the extent a response is deemed necessary as to the allegations in Paragraph 17, Frontier admits only those duties imposed by law and denies the remaining allegations in Paragraph 17.**

18. Such responsibility required that FRONTIER provide passengers with a safe and level egress and/or pathway from their aircraft onto a jet bridge which too is adjusted to level height and appropriately close distance from the threshold of the aircraft door, prior to allowing passengers

to commence the disembarkation process.

**ANSWER: The allegations of Paragraph 18 consist of legal conclusions to which no response is required. To the extent a response is deemed necessary as to the allegations in Paragraph 18, Frontier admits only those duties imposed by law and denies the remaining allegations in Paragraph 18.**

19. FRONTIER's duty also included the responsibility to ensure that the aircraft remained properly balanced during the disembarkation process so as to avoid creating a dangerous condition to exiting passengers, by causing a gap and/ or misalignment of the pathway passengers were required to traverse in exiting the aircraft.

**ANSWER: The allegations of Paragraph 19 consist of legal conclusions to which no response is required. To the extent a response is deemed necessary as to the allegations in Paragraph 19, Frontier admits only those duties imposed by law and denies the remaining allegations in Paragraph 19.**

20. FRONTIER's duty of maintaining aircraft balance included the proper removal of cargo or other potential changes to avoid the proper and safe distribution of the aircraft's weight while passengers were exiting the aircraft.

**ANSWER: The allegations of Paragraph 20 consist of legal conclusions to which no response is required. To the extent a response is deemed necessary as to the allegations in Paragraph 20, Frontier**

**admits only those duties imposed by law and denies the remaining allegations in Paragraph 20.**

21. Despite the foregoing, on February 9, 2023, after the Subject Flight parked at the gate, passengers were advised that an imbalance in the aircraft's weight posed a potential risk of harm which required that all passengers immediately disembark the aircraft.

**ANSWER: Frontier is without sufficient knowledge of information necessary to form a belief as to the truth of the remaining allegations in Paragraph 21.**

22. FRONTIER employees, agents and/or servants then proceeded to yell at, hurry and/or otherwise rush passengers, including ANN NUZZO, to exit the aircraft and onto the jetway which was positioned at an unsafe height and distance from the opening of the aircraft.

**ANSWER: Frontier denies the allegations in Paragraph 22.**

23. On February 9, 2023, while disembarking the subject flight onto the jetway under the above described circumstances, ANN NUZZO was caused to fall and suffered serious and permanent injuries, as more fully described herein, due to FRONTIER'S negligence as aforesaid.

**ANSWER: Frontier denies the allegations in Paragraph 23.**

24. FRONTIER'S negligence included but is not limited to creating an unbalanced aircraft, failing to provide a safe means of egress and failing to warn ANN NUZZO of the mis-leveled and unreasonable distance from the aircraft

door threshold and the jetway.

As a direct and proximate result of FRONTIER'S beach of their duty and negligence, ANN NUZZO suffered the following items of damage:

    a) Past, present and future disability, discomfort, disfigurement, inability to lead a normal life, shame, humiliation and scarring;
    b) Past, present and future medical and related expenses;
    c) Past, present and future physical and mental pain and suffering;
    d) Past, present and future aggravation of a pre-existing condition; and
    e) Past loss of income and future loss of capacity to earn income in the future.

**ANSWER: Frontier denies the allegations in Paragraph 24, including subparts (a)-(e).**

## CAUSE OF ACTION AGAINST G2

Frontier incorporates by reference all answers stated in response to Paragraphs 1-24 above as though set forth fully herein, and further answers:

Paragraphs 25-33 of Plaintiff's Complaint are addressed to parties other than Frontier, and as such, no response from Frontier is required as to those paragraphs. To the extent a response from Frontier is deemed required as to the allegations in Paragraphs 25-33 of Plaintiff's Complaint, they are denied.

## GENERAL DENIAL

Any allegation directed to Frontier not expressly admitted or responded to is hereby denied.

## AFFIRMATIVE DEFENSES

Frontier asserts the following affirmative defenses to preserve them for trial. Frontier reserves the right to add or withdraw applicable defenses as appropriate.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state facts sufficient to state a claim for relief against Frontier.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff may lack capacity and/or standing to bring this action.

## THIRD AFFIRMATIVE DEFENSE

To the extent Plaintiff was injured, Frontier was not the actual cause of those injuries.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, were proximately caused by the acts or omissions of other persons and entities over whom Frontier had no control or right of control, and said acts or omissions were the sole proximate cause of Plaintiff's damages, if any.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, were caused by the acts or omission of other persons or entities which Frontier is not liable or responsible. In the event Frontier is found liable to the Plaintiff, which Frontier expressly denies, Frontier may be entitled to indemnification contribution or apportionment of liability and fault pursuant to applicable law.

**SIXTH AFFIRMATIVE DEFENSE**

Claims and recovery by Plaintiff may be barred, in whole or in part, under the applicable laws governing comparative fault, contributory negligence, and/or assumption of the risk due to the acts or omissions of the Plaintiff.

**SEVENTH AFFIRMATIVE DEFENSE**

The damages, if any, of the Plaintiff may have been directly and proximately caused by an unavoidable accident or act of God for which Frontier is not liable.

**EIGHTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint should be dismissed on the ground that Plaintiff has failed to join necessary and indispensable parties.

**NINTH AFFIRMATIVE DEFENSE**

Plaintiff's damages, if any, may be barred and/or limited under applicable law.

**TENTH AFFIRMATIVE DEFENSE**

Frontier complied with all applicable codes, standards, and regulations of the United States and agencies thereof.

**ELEVENTH AFFIRMATIVE DEFENSE**

Plaintiff's damages, if any, may be barred and/or limited under applicable law due to the Plaintiff's failure to mitigate damages.

**TWELFTH AFFIRMATIVE DEFENSE**

Some or all of Plaintiff's claims may be barred in whole or in part because Plaintiff may have already received full satisfaction and/or compensation for his

injuries and damages, if any, and his claim may be barred by Plaintiff's prior release of claims and/or accord and satisfaction with any entity.

## THIRTEENTH AFFIRMATIVE DEFENSE

An award or judgment rendered in favor of the Plaintiff must be reduced by the amount of benefits Plaintiff received, or is entitled to receive, from any source as a result of the alleged incident.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred in whole or in part and/or preempted by federal law or International Conventions, including but not limited to the Airline Deregulation Act of 1978.

## FIFTEENTH AFFIRMATIVE DEFENSE

Frontier reserves its rights to assert any and all additional defenses as may be revealed by further investigation and discovery and to supplement and amend its affirmative defenses as necessary in light of any fact's allegations, claims, or changes or modifications in the law.

## PRAYER FOR RELIEF

Frontier prays for the following relief from this court:

1. A judgment that Plaintiff takes nothing from Frontier by way of her Complaint;

2. An award to Frontier of costs of suit and recoverable attorneys' fees; and

3. Such other and further relief as this court deems proper.

## DEMAND FOR JURY TRIAL

Frontier hereby demands a trial by jury.

Dated: March 20, 2025

/s Derek J. Angell
**DEREK J. ANGELL, ESQ.**
Florida Bar No. 73449
dangell@ohalaw.com
**O'CONNOR, HAFTEL & ANGELL, PLLC**
800 N Magnolia Ave, Ste 1350
Orlando, Florida 32803
(407) 843-2100
(407) 843-2061 Facsimile
www.ohalaw.com
*Attorneys for Defendant FRONTIER AIRLINES, INC.*